UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| CALVIN L. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 07-249-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| SUZANNE HASTINGS, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Calvin L. Allen, Sr., is confined in the Petersburg Medium Federal Correctional Institution which is located in Petersburg, Virginia. He has filed a prisoner *pro se* civil rights action asserting claims under: (1) Title 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); and (2) the Federal Tort Claims Act, Title 28 U.S.C. §§ 1346(b), 2671-2680.

The plaintiff has also filed an "Application to Proceed *In Forma Pauperis*," [Record No. 5]. The Court has addressed that motion by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. See *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. See *Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). Under 28 U.S.C. §

1915(e)(2), a district court can dismiss a civil case at any time if it determines that the action is: (I) frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

NAMED DEFENDANTS

The named defendants are: (1) Suzanne Hastings, the former warden of the United States Penitentiary-Big Sandy ("USP-Big Sandy") and (2) the Federal Bureau of Prisons ("BOP").[1]

CLAIMS AND RELIEF REQUESTED

Plaintiff claims that his religious rights, guaranteed by the First Amendment of the United States Constitution, were violated. He alleges that USP-Big Sandy prison staff allowed a hospital to render emergency medical treatment to him in connection with a stabbing injury. Among the other medical services rendered to him, the plaintiff received a blood transfusion.

The plaintiff seeks damages through the mechanisms of both a *Bivens* civil rights action and through the FTCA.[2] To the extent there may have been any confusion, the

---

[1] The current warden of USP-Big Sandy is Hector Rios.

[2] The actions falls under *Bivens* because the plaintiff specifically states that his constitutional rights were violated. Additionally, he invokes the FTCA. In the pre-printed complaint form [Record No. 2], the plaintiff was asked what type of relief he is seeking. His response was to that question was:

"Federal Tort Claim MXR 2006 05606
I C.L. Allen Sr. claim monetary damages of $50,000.00 dollars and punitive damages of $30,000.00 total $80,000 and 000 cents. Liable the Federal Bureau of Prisons."

[Record No. 2, § VI, p.3].

2

plaintiff has now filed a pleading stating that he asserts claims under both avenues [*See* Motion, Record No. 6]. It further appears that the plaintiff is asserting a Fifth Amendment challenge to disciplinary sanctions imposed against him at USP-Big Sandy on June 15, 2006.

## ALLEGATIONS OF THE COMPLAINT
### 1. Factual Background

In Section § IV of the Complaint Form, the plaintiff was asked to explain the factual basis of his claims [Record No. 2, p.3]. The first few paragraphs of his response consisted of an incomprehensible stream of phrases, names and dates [*Id*.]. The plaintiff loosely referred to several events, including a "DHO hearing," a conspiracy, and being taken to the hospital and being given blood without his consent, and in violation of his religious beliefs [*Id*., p.4]. The Court has tried to reconstruct the facts, using the responses and the attachments to the complaint.

The plaintiff was previously confined in the USP-Big Sandy which is located in Inez, Kentucky. The plaintiff attached to his complaint two pages of what appears to be a report of a Disciplinary Hearing Officer ("DHO") [Record No. 2-2, pp. 1-2]. It appears from this exhibit that on June 15, 2006, the DHO convicted the plaintiff of fighting with another inmate (Offense Code 201) and sanctioned the plaintiff to: (1) 30 days of disciplinary segregation (suspended pending 180 days of clear conduct); (2) the forfeiture of 30 days of Good Time Conduct; and (3) the loss of three months of Commissary Privileges (from 5/9/06 until 8/9/06) [*Id*].

In a supplemental filing, the plaintiff also attached a February 26, 2007 letter from Michelle T. Fuseyamore, Regional Counsel for the BOP Consolidated Legal Center [*See* letter, Record No. 3-2]. In that letter, Ms. Fuseyamore acknowledged receipt of the plaintiff's

3

September 25, 2006 FTCA claim, which she identified as "Administrative Tort claim #TRT-MXR-2006-05606." [*Id.*].  According to Fuseyamore's letter, the plaintiff asserted four claims under the FTCA.[3]

Fuseyamore denied all of the plaintiff's claims.  Her letter provides some background as to the relevant facts.  Fuseyamore states that on January 4, 2006, while the plaintiff was confined at USP-Big Sandy, he was stabbed by another inmate and sustained serious internal bodily injuries.  Prison staff transported him to a hospital where he was provided with immediate medical assistance in connection with the stabbing incident, which assistance included a blood transfusion.  Although the plaintiff was injured in the stabbing incident, the plaintiff was nevertheless charged with and convicted of fighting with another inmate, and received the sanctions previously discussed.

In his FTCA claim, the plaintiff had apparently complained that because the

---

[3]

In his FTCA claim, the plaintiff had apparently asserted two other claims. First, he alleged that the USP-Big Sandy prison staff negligently allowed metal detectors to be removed from the housing units, which removal facilitated, or enabled, the inmate's stabbing assault on him. Fuseyamore denied that claim, noting that the prison officials have discretion to decide where metal detectors are placed within the prison.

Second, he apparently also asserted a claim for lost performance pay from his prison job, which he claims he lost while confined in SHU.  Fuseyamore denied that claim, explaining:

> Your allegations for wrongful segregation status reveal that due to the incident and security issues, your status in the Special Housing Unit (SHU) was appropriate. Since you were housed in SHU, you would not have been working and would not be entitled to inmate performance pay for that time period.

[Record No. 3-2, p.2]

These claims warrant no further discussion in this Order because the plaintiff does not appear to be raising these specific claims in the complaint filed in this action.

emergency medical treatment with which he was provided (specifically a blood transfusion) went against his religious beliefs, his First Amendment rights had been violated. Fuseyamore denied that claim, explaining that under BOP Program Statement 6031.01, *Patient Care*, § 5 (G) and (H), prison officials are vested with the powers of a "Proxy Decision Maker." Under P.S. 6031.01, prison officials are authorized to make decisions affecting an inmate's health if the inmate is incapacitated  She concluded that prison officials acted properly in taking the plaintiff to the hospital and authorizing the hospital to provide all medical services, including the blood transfusion, necessary to save the plaintiff's life.

## 2. Claims Asserted in Complaint

First, the plaintiff alleges that the USP-Big Sandy's decision to provide him with medical services, specifically a blood transfusion, violated his religious beliefs protected by the First Amendment of the United States Constitution. The plaintiff seeks damages under both *Bivens* and the FTCA.

Second, it appears that the plaintiff challenges sanctions imposed against him for fighting with another inmate at USP-Big Sandy. The sanction consisted of: (1) 30 days of disciplinary segregation (suspended pending 180 days of clear conduct); (2) the forfeiture of 30 days of Good Time Conduct; and (3) the loss of three months of Commissary Privileges (from 5/9/06 until 8/9/06) [*Id*] , which included being confined in SHU.

## DISCUSSION

In the Order entered on January 31, 2008, the Court characterized this action as one falling under the FTCA [*Id*., p.2]. The plaintiff has filed a motion [Record No. 6] requesting

5

the Court to construe his claim as one falling under both the FTCA and Bivens. The Court agrees that the complaint should be read to assert claims under both the FTCA and *Bivens*, and will instruct the Clerk to so classify this action. The complaint, however, suffers from deficiencies on both accounts and will therefore be dismissed for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(ii).

1. FTCA Claims

The FTCA applies to federal inmates' claims alleging personal injuries sustained while incarcerated because of negligence of government employees, *United States v. Muniz*, 374 U.S. 150 (1963), and provides the exclusive remedy for tort actions against the federal government, its agencies and employees.[4] The FTCA makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see generally*, *Dolan v. United States Postal Serv.*, 126 S. Ct. 1252, 1256 (2006).

The FTCA contains a two-pronged statute of limitations. First, an FTCA tort claimant must present his claim, in writing, to the appropriate agency within two years of the date the claim accrued. Second, he must bring a civil action within six months after the agency mails the notice of final denial of the claim. 28 U.S.C. § 2401(b); *Blakely v. United States*, 276 F.3d 853, 865 (6th Cir.2002); *Graham v. United States*, 96 F.3d 446, 448 (9th Cir.1996).

---

[4] Technically, the only proper defendant in an FTCA action is the United States of America. *Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990). The Court will not bother to add the United States as a party, because the complaint will be dismissed on other grounds.

Here, the BOP notified Plaintiff Allen by letter dated February 26, 2007, that his various claims, including his First Amendment religious claims stemming from the medical treatment he received on January 4, 2006, had been rejected. The letter informed the petitioner that he had six months from the mailing date of the notification to file suit in federal district court as to his negligence claims of lost or stolen personal property.

In this case, the plaintiff's six-month deadline would have expired on or about August 26, 2006. Allen did not file this action until December 19, 2007, almost four months after the statute of limitations for filing his FTCA claims had expired. The petitioner's FTCA claims asserted in this action are thus time-barred and will be dismissed with prejudice. *See Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995). *Brockett v. Parks*, 48 Fed. Appx. 539, *541, 2002 WL 31260347, **2 (6th Cir. (Ky.) 2002).

2. *Bivens* First Amendment Claims

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other incident to prison life, such as excessive force, to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S.Ct. 983 (2002); *Lavista v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999);

The plaintiff alleges in his complaint form that he attempted to pursue some form of administrative exhaustion of his claims under the PLRA, but it is unclear from his statement how extensive the effort was. It is irrelevant, because his First Amendment claim fails on merits and must be dismissed.

7

Under *Bivens*, the plaintiff must plead and prove two essential elements. First, he must show that he has been deprived of rights secured by the Constitution or laws of the United States. Second, he must demonstrate that the defendants allegedly depriving him of those rights acted under color of *federal* law. *Bivens*, 403 U.S. at 397.

Prison officials may limit a prisoner's First Amendment rights if their actions are reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 525 (11th Cir.1994) (per curiam). Addressing the issue of restrictions on inmate privileges, the United States Supreme Court explained as follows in a case as recent as 2003:

> "The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). And, as our cases have established, freedom of association is among the rights least compatible with incarceration. *See Jones*, *supra*, at 125-126; *Hewitt v. Helms*, 459 U.S. 460 (1983). Some curtailment of that freedom must be expected in the prison context."

*Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 2167 (2003).

Under 18 U.S.C. § 4042, the BOP has a duty to exercise ordinary diligence to keep federal inmates safe and free from harm. *United States v. Muniz*, 374 U.S. 150 (duty of care owed by the BOP to its inmates is established in 18 U.S.C. § 4042). Under this standard of care established in § 4042, correctional officials are expected to use ordinary care to protect prisoners from unreasonable risks, not to provide them with a risk free-environment.

*Fleishour v. United States*, 365 F.2d 126, 128-29 (7th Cir.), *cert. denied*, 385 U.S. 987 (1966); *see also Flechsig v. United States*, 786 F. Supp 646, 649-50 (E. D. Ky. 1991), *aff'd*, 991 F.2d 300 (6th Cir. 1993) (BOP's duty under § 4042 is not absolute; its duty depends on the reasonableness under the circumstances); *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987); *Artis v. Petrovsky*, 638 F. Supp. 51, 53 (W. D. Mo. 1986).

Plaintiff Allen does not state what religion he observes, nor does the Record indicate that he communicated this fact to prison officials. Nevertheless, he states that his First Amendment rights were violated when the prison directed hospital emergency personnel to provide him with life-saving medical treatment. The plaintiff had sustained a stabbing wound. The medical records indicate that the injury damaged the plaintiff's liver and that a blood transfusion was needed to prevent further damage, or death [Record No. 2-2, pp 3-5]. He was hospitalized for six days [*Id*]. This medical treatment probably saved the plaintiff's life.

Here, confronted with the plaintiff who was bleeding from internal injuries sustained by a potentially fatal stabbing injury, USP-Big Sandy officials were simply fulfilling their statutory duty, under § 4042, to exercise ordinary diligence to keep the plaintiff from bleeding to death. Allowing the plaintiff to bleed to death, and refusing to take him to a hospital where he could receive life-saving medical treatment, would have amounted to subjecting the plaintiff to an unreasonable risk of death. Keeping an inmate alive is undeniably a policy reasonably related to legitimate penological interests. *Turner* 482 U.S. at 89.

Had USP-Big Sandy officials failed to act quickly and direct the hospital to provide these life-saving emergency medical services - -including the blood transfusion - - they might have exposed themselves to potential claims under the Eighth Amendment, which prohibits cruel and unusual punishment. One form of cruel and unusual punishment is the denial or proper medical care for a serious physical injury.

Finally, the Court notes that judicial micro-management and day-to-day decisions of prison officials are activities which the United States Supreme Court has not encouraged. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78; *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The Court will not second guess the prison's obvious and reasonable decision to rush the plaintiff to a hospital to receive emergency medical treatment for the stabbing injury. Simply put, the prison officials had no choice other than to do what they did, under the circumstances.

3. Challenges to Disciplinary Sanctions

In his complaint, the plaintiff states that Case Manager Slone made incorrect entries on the Incident Report [Record No. 2, p.4]. The plaintiff asserts other Fifth Amendment challenges to his disciplinary conviction and the sanctions imposed against him. To the extent that the sanctions caused the plaintiff to forfeit 30 days of statutory good time credits, these claims would fall under the ambit of a habeas corpus claim, pursuant to 28 U.S.C. § 2241.

The court is unable to address the merits of the plaintiff's challenges to his disciplinary hearing. A federal prisoner must first exhaust his available remedies before filing

a 28 U.S.C. § 2241 petition for habeas corpus relief. *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir.1981) (per curiam). Under the Bureau of Prison's Administrative Remedy Program, the first level of appeal from a DHO decision is an appeal to the Regional Director. 28 C.F.R. § 542.14(d)(2). To appeal from a decision of the Regional Director, an inmate must appeal to the General Counsel within thirty calendar days of the date the Regional Director signed the response, absent a valid reason for delay. 28 C.F.R. § 542.15(a).

It does not appear that Plaintiff Allen appealed the DHO's adverse decision to the BOP's Regional Director. Federal prisoners who procedurally default on their administrative claims must demonstrate cause and prejudice for the omission. *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir.1996); *Sanchez v. Miller*, 792 F.2d 694, 697-99 (7th Cir.1986); *See Wade v. Perez*, 14 Fed. Appx. 330, *331, 2001 WL 856967, **1 (6th Cir.(Ky.), 2001) (prisoner was precluded from bringing writ of habeas corpus challenging the result of the prison disciplinary proceeding where he failed to exhaust his administrative remedies by timely appealing to the general counsel the regional director's decision affirming determination by disciplinary hearing officer).

Here, the plaintiff has set forth no facts constituting cause for his failure to administratively exhaust his construed habeas corpus claim. That claim will be dismissed without prejudice to the plaintiff later demonstrating exhaustion of his habeas claims.

CONCLUSION

The Court being sufficiently advised, it is **ORDERED** as follows:

(1) The plaintiff's "Motion to Reclassify Claim and Damage Type" [Record No. 6]

is **GRANTED**.

(2) The Clerk of the Court is directed to reclassify this action as one falling under **both** 28 U.S.C. § 13331 and the Federal Tort Claims Act, Title 28 U.S.C. §§1346(b), 2671-2680.

(3) The plaintiff's First Amendment claims under *Bivens*, 28 U.S.C. § 1331, are **DISMISSED WITH PREJUDICE**.

(4) The plaintiff's claims under the FTCA are **DISMISSED WITH PREJUDICE**.

(5) The plaintiff's construed claims under 28 U.S.C. § 2241 are **DISMISSED WITHOUT PREJUDICE**.

(6) This action is **DISMISSED** from the docket of the Court.

(7) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

This the 26th day of February, 2008.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge